No. 17,195.

THE ÆTNA POWDER COMPANY v. HILDEBRAND ET AL.

CONTRACT.—*Agency for Sale of Goods.*—*When Relation of Debtor and Creditor Arises.*—*Trust.*—Where by the terms of a contract goods are consigned by one person to another to sell as agent upon commission, the latter to guarantee all sales, and to make a report at the end of each sixty days of the amount of sales, and to pay for the same, less commissions, with his sixty day note, the proceeds of sales vest in the consignee, and the relation of debtor and creditor arises as to the proceeds of the goods sold, whether the notes stipulated for be executed or not, and upon the insolvency of the consignee the consignor is not entitled to follow such proceeds as a trust fund, but can only proceed as a common creditor.

PLEADING.—*Theory.*—*Demurrer.*—A pleading must proceed upon one definite theory, and it must be good upon that theory or it will be held insufficient on demurrer, even though it might be good upon another theory.

From the Marion Superior Court.

*F. H. Blackledge* and *W. W. Thornton*, for appellant.

*S. M. Chambers, S. O. Pickens, C. W. Moores, U. J. Hammond* and *E. St. G. Rogers*, for appellees.

McCABE, J.—Jacob S. Hildebrand and James L. Fugate had been partners in the mercantile hardware business in Indianapolis for many years. Becoming embarrassed and insolvent, one of them, Jacob S., filed a petition in the superior court against the other, James L., alleging their insolvency and asking a dissolution of the partnership and the appointment of a receiver to take charge of, and wind up, the affairs of said partnership. Whereupon such proceedings were had at special term as that Alonzo P. Hendrickson was duly appointed receiver for, and who took possession of, the assets of said firm.

The appellant, the Ætna Powder Company, appeared and filed an intervening petition asking to make Edwin

St. George Rogers and Philip M. Hildebrand parties defendant.

The substance of the intervening petition is that the appellant had, on the 11th day of February, 1886, entered into a written contract with the firm of Hildebrand & Fugate, a copy of which, as an exhibit, is filed with the petition, and by which, it is claimed, the appellant, constituted said firm the agent and trustee of appellant to sell, as such agent, powders manufactured by appellant.

It is further alleged that said contract continued in force until the 25th day of September, 1893, when it was terminated by appellant; that appellant, during that time, furnished to said firm many thousands of pounds of its high explosive powders to sell in accordance with the terms of said contract; that said firm, pursuant to said contract, on the first day of May, 1893, in writing, reported to appellant that for the sixty days immediately preceding that date there was due from them to appellant, on sales made of said powder so furnished after deducting their commissions and other lawful charges, the sum of $677.27. And on July 1, 1893, a like report was made by said firm showing that for the sixty days immediately preceding that date, there was due from them to appellant on sales made of said powders so furnished, after deducting their commissions and other lawful charges, the sum of $515.07. And that on the 1st day of September, 1893, a like report was made by said firm, that for the sixty days immediately preceding that date there was due from said firm to appellant, on sales of said powders so furnished, after deducting their commissions and other lawful charges, the sum of $313.55; that from the last report to the termination of the contract the amount reported as due appellant on account of sales in that time, after deducting commissions and other charges,

amounted to the sum of $26.40, amounting in all to $1,-694.54, all of which is due appellant and remains wholly unpaid; that no note was at any time executed by said firm to appellant for all or any part of said sums so reported due appellant on powder sold by said firm, as aforesaid; that of the moneys due on said sales of powders during the sixty days immediately preceding said May 1, 1893, and the sixty days immediately preceding September 18, 1893, said firm collected, before the appointment of the receiver, large sums, the amounts of which appellant is unable to state, which amounts so collected they placed and deposited with moneys of said firm, either in or out of bank or both, and never remitted or paid the same to appellant; and that parts of such amounts thus collected, but how much appellant is unable to state, said firm, without the consent of appellant, used for the purpose of purchasing goods, wares and merchandise for their said business, and the goods thus purchased became a part thereof, and are now a part of the assets of said firm, and the moneys derived from the sale by said firm of the goods, wares, and merchandise thus purchased were either used by said firm in their said business or were on hand at the time said receiver was appointed, but whether all of said fund was used or kept, or whether a part was used and a part kept, or whether said receiver has received parts of the amounts of said sales since his appointment, appellant is unable to state; that the receiver had taken possession of all the accounts and contracts of sale of said powders, that had been made during the sixty days previous to said May 1, 1893, and from that date to said September 18, 1893, the date of the last report, which had been uncollected and unsatisfied, and has, as such receiver, collected and received a part or the whole of the amount due thereon, and now has the same in his possession, but how much

he has thus collected appellant is unable to state; that before the appointment of said receiver said firm of Hildebrand & Fugate had executed a mortgage upon all of the assets of said firm to Philip M. Hildebrand and Edwin St. George Rogers, including the property that had been purchased by said firm, with the moneys collected by said firm on said contracts of sale of said powders; that said mortgage was executed to said Philip M. Hildebrand and Rogers to secure debts and obligations of said firm to said mortgagees due before the execution of said mortgage; and that the same was not given for an extension of time of payment of said indebtedness nor for any new obligation or indebtedness.

Prayer that appellant's claim be declared a preferred one to all other creditors, and to the mortgagees' claim.

The contract on which the petition is founded reads as follows:

"It is this day agreed between the Ætna Powder Company of Chicago, Ill., and Jacob S. Hildebrand and James S. Fugate, co-partners, composing the firm of Hildebrand & Fugate, at Indianapolis, Indiana, jointly and severally as follows:

"The said Ætna Powder Company, for their part, agree to consign to the said Hildebrand & Fugate, to sell as agents, such powders, of the kinds manufactured by the Ætna Powder Company, as shall be needed, and pay the freight on the same to Indianapolis; that said Ætna Powder Company will establish a scale of prices below which the goods so consigned shall not be sold, and that they hereby reserve the right to change the same at any time, and will, and hereby do, authorize the said Hildebrand & Fugate to sell the goods so consigned at the prices so established.

"The said Ætna Powder Company further agree that

they will allow the said Hildebrand & Fugate, as a commission for selling the goods so consigned, and for guaranteeing all sales made by them, the sum of ten per cent. of the gross sales of all powder known and branded as Ætna High Explosive, with an additional allowance of thirty cents per case for cartage. The said Hildebrand & Fugate, for their part, agree to act as agents for the said Ætna Powder Company for the sale of the powder so consigned to them; to use due diligence in selling; to guarantee all sales made, and to become the agents for the sale of no other high explosive powder while they retain the agency as above. The said Hildebrand & Fugate also agree to adhere strictly to such scale of prices as are furnished by the Ætna Powder Company.

"The said Hildebrand & Fugate furthermore agree to make no charges for storing, selling, or delivery, other than the commission above specified, and to be responsible for the good and safe keeping of the powder after the delivery to them, unavoidable accidents (occurring from no neglect or carelessness on their part) excepted.

"The said Hildebrand & Fugate furthermore agree to make a true and correct report to said Ætna Powder Company of all sales, at the end of each sixty days, of the amount of sales for that time, reporting the full selling price of all sold, and to pay for the same, less their commissions as above, with their sixty day note.

"It is further agreed that either party being desirous of terminating this contract must give a reasonable notice to the other, and make satisfactory arrangements for the disposition of property and full settlements of mutual accounts.

"In witness of the above we have hereunto set our hands at ———, this the 11th day of February, 1886.

"[Sign in duplicate.]    HILDEBRAND & FUGATE."

A demurrer to the petition, for want of facts sufficient,

was sustained by the special term, and the appellant standing by the demurrer, and refusing to plead further, the appellees had judgment upon the demurrer.   On appeal to the general term the judgment was affirmed, holding that the demurrer was rightly sustained to the petition.   That ruling of the general term is assigned here for error.

The appellant contends that the contract on which the petition is founded creates the relation of principal and agent between the appellant and the firm of Hildebrand & Fugate for the sale of the powders mentioned therein; and that by the terms of that contract the title to the goods remained in appellant as consignor until sold by such firm as such agent; and that the proceeds of such sales vested in appellant as soon as the sales were made; and that the firm of Hildebrand & Fugate became trustee to collect and pay over to appellant such proceeds, less their commissions and other lawful charges.   And appellant further contends that the fund arising from such sales is a trust fund, which the appellant, as *cestui que trust,* may follow into whatever shapes or forms it may pass, so long as it can be identified; and that the facts stated in the petition, while they show that the fund has become commingled and consolidated with the funds and assets of the insolvent firm, yet that equity will fasten the trust upon the estate of the failing partnership by making appellant a preferred creditor so as to get the alleged trust fund out of the estate in the hands of the receiver.

Both of these propositions are disputed by the appellees.   They concede that the contract does create an agency; that the firm of Hildebrand & Fugate was thereby made the agent of appellant to sell their powders; that the property in the goods consigned remained in appellant as the consignor until the sale took

place; and that thereupon said firm ceased to be an agent as to so much and such part of the goods consigned as had been sold by such consignees, and they thereupon became the debtor of the consignor, the appellant, for the price stipulated in the contract, less their commissions and lawful charges.

The appellant's learned counsel concede that this would be the legal status and result under and by virtue of the terms of the contract, if its terms had been complied with by Hildebrand & Fugate in executing to appellant the sixty day notes at the stipulated times for the amount of the sales of powder by them made, less their commissions and lawful charges.

The concession, then, is that while the relation of principal and agent is created by the contract to sell goods by Hildebrand & Fugate, as such agents for appellant, and that the property in the goods remained in the appellant until a sale took place, in pursuance of the contract of agency, yet that when that contract was carried out, the relation of principal and agent ceased at that point, and, by virtue of the contract, a new relation arose, namely, that of debtor and creditor, for the amount for which the goods sold, less commissions and charges.

The only difference, therefore, between counsel on both sides as to this point is that appellant's counsel contend that a different relation between the parties than that provided in the contract may arise or be created by the act of one of the parties thereto without any new contract, or the modification of the old by mutual agreement of both.

Such a doctrine is at variance with the plainest and most familiar elementary principles of the law of contracts.

It is manifest that the contract fixes the relations be-

tween the parties thereto at every stage of the transactions provided for therein. It is also manifest that the failure to execute the notes at the times specified in the contract to pay the proceeds of the sales made during the several periods specified therein, to the appellant, less the commissions and charges, does not change the terms of the contract, nor does it release the obligation of the firm of Hildebrand & Fugate to pay appellant such amounts. If it did, then Hildebrand & Fugate, having made improvident sales on credit to purchasers who afterwards proved insolvent and unable to pay, could take advantage of their own wrong, refuse to execute the notes in violation of their contract, and then insist on throwing the loss on the appellant in further violation of their contract. The terms of the contract vest the property of the proceeds of the sales, whether made for cash in hand or on credit, in the firm of Hildebrand & Fugate, and obligate them to pay in sixty days after the close of each period specified during which sales were made.

The obligation thus created is not that of an agent to his principal, but that of a debtor to his creditor. Their failure to execute the notes therefor, pursuant to the contract, does not change their respective relations to each other, nor the obligation of Hildebrand & Fugate to pay.

The appellant's learned counsel attempt to liken the transaction to a sale of personal property, where the title to the property will not pass until the terms of the sale are complied with. For instance, if a sale of such property is made for cash in hand, or for notes to be executed for the purchase-price. In such a case it is said the title will not pass until the purchase-price is paid or the notes executed. And they apply this principle to the proceeds of the sales of powder. But the contract in

this case provides for the vesting of the title to the proceeds of sales in Hildebrand & Fugate before the time for the execution of the notes or the payment of the money. It makes no provision for a report of even the names of the purchasers of the powder, much less the amounts purchased by each, nor the obligations entered into by each to pay therefor. Had the contract contemplated that the appellant in any event had, or was to have, any title to or interest in such proceeds, it would most likely have contained such a provision. It clearly contemplated that Hildebrand & Fugate assumed all risks of the solvency and honesty of the purchasers of powder as their debtors, and that appellant assumed all risks of the solvency and honesty of Hildebrand & Fugate as appellant's debtors for the proceeds of sales of powder, less commissions and charges.

The case of *Nutter* v. *Wheeler*, 2 Lowell's Dec. (Mass.) 346, is very much like the present case in every respect.

The court, in that case, on pages 348–9, said: "And it is plain that the goods sent to Boston by the defendants, from time to time, remained their property until they were sold, and that when a sale occurred Gear became immediately the debtor at a fixed price, and was bound to pay at a definite time, and that he never consulted with them about terms or purchasers, or anything else, except the variations of the trade price; never accounted to them or was expected to account as agent, or was subject to their directions, excepting as to the tools remaining in his hands undisposed of. As to those goods sent to Boston, he may be described as a bailee, having power to sell as principal. Until a sale was made, the property in the goods remained in the defendants, and they were well justified in reclaiming those which remained on hand at the time of the failure of Gear. But after the goods were sold, the agreement appears to have

been that Gear's credit only was looked to. Perhaps there were conveniences in this mode of conducting the business. Whatever profit or loss Gear might make, or whatever credit he might give, the defendants had a fixed price and a fixed time of payment. He never consulted them about his sales, or rendered any account of sales. The prohibition against selling below the trade price is a very common one between a manufacturer and those who buy of him to sell again, and is intended to prevent a ruinous competition between sellers of the same article. I have often known this arrangement to be made by a patentee and his various licensees. It has but little tendency to prove agency.   *   *   *   But the real inquiry in all cases is, whether the credit was given to the person sought to be charged by the person seeking to charge him.   *   *   *   If the relation of the parties was such as I have considered it, then, even as to the goods which had once been consigned to Gear, he should be considered as the purchaser, subject only to the understanding that he was neither the owner of them, nor liable to pay for them until he had succeeded in finding a purchaser; but when he did sell, he immediately became the principal, and the defendants ceased to have the rights of a consignor, and could not follow the goods or their proceeds as undisclosed principals.''

Among the authorities cited in the above opinion is the late English case of *Ex parte White,* 6 Chancery Appeals Cases, 397. That case was almost an exact parallel to the case at bar, and it was there held that the proceeds of such sales vested in the person who had been agent until the sale was made, and that thereupon he became a debtor.

It was said by that high court on pages 400 and 401, that:   ''Mr. Nevill was not to pay immediately; and if he sold for cash, it seems to me impossible that Towle &

Co. could have any right to say, 'you have sold the goods
for cash, therefore  hand over the moneys to us at once.'
Nevill would have said, 'no; the bargain  between  us  is
that I am to give you an account at the end of the month,
and to pay you at the end of  another month.    My sell-
ing for hard cash does not alter  the  nature  of  the  bar-
gain between you and me, or entitle you to call upon me
to hand the moneys over to you, or to put the moneys *in
medio* and keep  them  for  you.'    The  proceeds of sale
were his own moneys,  *  and he was at liberty to deposit
them with a banker, or deal with them as he pleased.''

On appeal to the House of Lords this case was affirmed.
21 Weekly Rep. 465.

To the same effect is *In re Linforth,* 4 Sawyer ( U. S. ),
370.

We are, therefore, of  opinion that the proceeds of  the
sales of powder under the contract  were the property  of
the firm of Hildebrand & Fugate, and that the appellant
has only a claim as a common creditor against the assets
of said firm in the hands of the receiver of the firm.

The appellant's counsel  suggest  that the court  below
ought to be reversed, even though we  should reach  the
conclusions above stated, because it is claimed the inter-
vening petition states facts sufficient to enable appellant
to obtain an allowance of  the  claim as a common  cred-
itor of the firm.    But  the  theory upon  which the inter-
vening petition proceeds is wholly at variance with such
an allowance.    It proceeds upon the theory that no such
relation as debtor and creditor ever existed  between  the
appellant and the firm of Hildebrand & Fugate; that the
relation was that of principal and  agent, trustee and
*cestui que trust.*    It proceeds upon  the  theory  that the
proceeds of the sales of powder always belonged, and still
belong, to the appellant in equity, and  that the firm of
Hildebrand & Fugate held  them  as  trustee  for appel-

The Ætna Powder Company v. Hildebrand *et al.*

lant's benefit; and it seeks to follow them into the assets of that firm in the hands of its receiver, and invokes the aid of equity to fasten the trust upon them and hold them for appellant's benefit.

It is a familiar and well established rule that a pleading must proceed upon some one single definite theory, and it must be good upon that theory or it will be held insufficient on demurrer, however sufficient it might be on some other theory. *Feder* v. *Field,* 117 Ind. 386; *First Nat'l Bank, etc.,* v. *Root,* 107 Ind. 224; *Louisville, etc., R. W. Co.* v. *Godman,* 104 Ind. 490; *Chicago, etc., R. R. Co.* v. *Bills,* 104 Ind. 13; *Leeds* v. *City of Richmond,* 102 Ind. 372; *Holderman* v. *Miller,* 102 Ind. 356; *Bremmerman* v. *Jennings,* 101 Ind. 253.

The idea of making the intervening petition the basis for an allowance of the claim to appellant as a common creditor seems to be an afterthought put forth in the reply brief for the first time.

The intervening petition, for the reasons already stated, does not state facts sufficient to constitute a cause of action, or to entitle appellant to any relief on the theory upon which it proceeds.

The conclusion reached makes it wholly unnecessary to pass on the very interesting question so ably discussed in the briefs as to whether equity would follow a fund and fasten a trust upon it under the circumstances described in the intervening petition, and we intimate no opinion thereon. It is sufficient to end our inquiry in that direction when we reach the conclusion we have that the proceeds of the sales of powder never were a trust fund. We are, therefore, of opinion that the general term did not err in affirming the ruling of the special term in sustaining the demurrer to the intervening petition.

The judgment of the general term is affirmed.

Filed April 17, 1894.