In re MASON CO.

(District Court, D. Connecticut.   November 20, 1918.)

No. 3714.

1. INSURANCE ⬤═══79—TERMINATION OF AGENCY—NOTICE.
    Insurance agency contract construed as requiring 30 days' notice of cancellation only when without cause, and to give right to cancel at once for cause.

2. INSURANCE ⬤═══80—AGENCY—NATURE OF CONTRACT—OWNERSHIP OF PREMIUM.
    Contract whereby in terms· insurance company appointed a general agent, and required bond for payment of all moneys that became due from .agent to company, held one of principal and agent, and not of seller and buyer, so that title in premiums, except agent's commission, is in insurer, though clause providing for agent's each month, on the 20th, reporting business up to the 15th, and within 60 days thereafter remitting all premiums thereby shown due the company, provides all credits extended for payment of premiums shall be at sole risk of agent.

In Bankruptcy.   In the matter of the Mason Company, bankrupt. On petition of the Massachusetts Bonding & Insurance Company to review order of the referee denying its claim to premiums on insurance policies collected by the trustee.   Order modified.

Ralph H. Clarke, of New Haven, Conn., for petitioner.
Albert H. Barclay, of New Haven, Conn., for trustee.

THOMAS, District Judge.   This matter is now before the court on a petition for review of the referee's order denying the petition of the Massachusetts Bonding & Insurance Company, claiming as its property $1,311.09, the same being the amount of certain premiums on insurance policies written by said company through its general agents, the Mason Company, now bankrupt, which premiums, pursuant to an order of the referee, have been collected by the trustee and are held by him subject to the order of court.

The petitioner and the Mason Company entered into a contract in writing, which the petitioner alleges was a contract binding the Mason Company, the general agent, to sell policies of insurance written by the petitioner within certain prescribed limits in Connecticut and for certain commissions detailed in said contract.   The petitioner claims that this is a contract between principal and agent; the trustee claims that it is a contract between vendor and vendee.   Before passing upon this question, which is the main feature in the case, let us dispose of the subordinate issues.

⬤═══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Among other things the contract provided:

"That for any violation of, or failure to comply with, the conditions or provisions hereof, the general agent or the company shall have the right to cancel this agreement, and shall not be liable to the other for any loss, injury, or damage that may result therefrom. That this agreement will become effective from the 15th day of August, 1913, and will continue in force thereafter, subject to cancellation upon 30 days' notice from either party to the other, in writing. Depositing said notice in the United States mail, registered, shall be deemed a sufficient service thereof."

On the 3d day of March, 1915, the petitioner wrote the Mason Company the following letter:

"The Mason Company, 185 Church Street, New Haven—Dear Sirs: Confirming the writer's conversation with you of the 1st inst., you are hereby advised that, for reasons well known to your company, your appointment as agents of the Massachusetts Bonding & Insurance Company is revoked from the close of business March 1, 1915, and that from and after that date you have no authority to act as agent of said company in any capacity, nor to collect any premiums on policies or bonds issued by said company.

"Kindly acknowledge receipt of this communication at your early convenience, and oblige,

"Very truly yours,      C. W. Fletcher, Assistant Secretary."

The Mason Company was adjudicated a bankrupt on the 20th day of March, 1915, and on March 31, 1915, Franklin L. Homan was appointed trustee.

[1] Some controversy arises in the minds of counsel respecting the right of the home office to cancel the contract under the terms of it, but this feature of the case need present no difficulty whatever. As I read the terms of the contract, either party had the right to cancel the contract at once for cause; but, if either party desired to cancel the contract without cause, each was bound to give the other 30 days' notice. The Mason Company at the time this letter was written was much indebted to the home office, at least to the extent of $4,000, because suit for this amount was brought in the state court upon a note for premiums *other* than those now claimed by the petitioner, which note was dated on the 3d day of June, 1914, and was payable on or before December 31, 1914. This failure to pay according to the terms of the contract laid the basis for the home office to cancel the contract at once. So it was acting well within the terms of the contract and lawfully when it sent the above-quoted letter on the 3d of March, 1915.

[2] In passing upon the controlling feature of this case, it now becomes important to decide whether or not the contract was a contract of agency between principal and agent, or a contract between vendor and vendee, and the correct interpretation of the contract will determine the issues involved between the parties in this proceeding. Without quoting the entire contract, and for the purpose of ascertaining, if possible, the intent of the parties at the time of the execution of the contract, it will be necessary to refer to certain portions of it. In the preamble it is provided that, in consideration of the covenants hereinafter specified, the Massachusetts Bonding & Insurance Company (hereinafter called the company) hereby appoints the Mason Company (hereinafter called the general agents), its vice

president, secretary, and treasurer, as its general agents, etc. Later on the contract says: "The General Agents Agree"—which is a heading, and then follows the various things the general agents agree to do and not to do, and among others they agree to "keep an accurate record on the company's registers, books, or cards, which may be provided, of all business transacted, and forward to the home office a daily report of such business, together with applications for all policies, where an application is required." And further it is provided:

"That they will furnish the company, at its expense, a satisfactory surety bond in the sum of $3,000 specifically providing for the payment of all moneys that may become due from the general agents to the company."

Then, under the heading of what "The Company Agrees" to do, the contract provides:

"That it will furnish the general agents and all subagents with licenses, etc.; that it will furnish the general agents and all subagents with printed forms, stationery, etc."

And then, under the heading of what "It is Mutually Understood and Agreed," it is provided that the territory of the said general agency is defined as follows:

"That the territory of the said general agency is indeterminate, but in a general way will comprise that section of the state lying south of a line from Norwich, on the east, running through Middletown, Waterbury, and Danbury to the New York state line, on the west, the general agents expressly agreeing that they will not compete with, or interfere in any way with, agencies already established, in any of the cities mentioned, or within the territory assigned, without the full knowledge and consent, in writing, of the company."

And under the cancellation clause reference therein is made to what the *general agents* and *the company* shall have the right to do.

The fourth paragraph of the original contract was amended to read as follows:

"It is Hereby Mutually Understood and Agreed:

"That the fourth paragraph on the first page of said contract under the caption 'The General Agents Agree,' is amended to read as follows:

"That all credits extended for the payment of premiums shall be at the sole risk of the general agents, and that not later than the 20th day of each month they will forward to the home office a full and accurate report in the form required by the company of all business transacted for or on its behalf for the period ending on the 15th day of the month for which such report is made, and will remit the full amount of all premiums shown by such report to be due the company within sixty days after the date on which such report is due at the home office of the company; that is to say, the general agents will forward on the 20th day of January a report of business transacted from the 15th day of the preceding December to the 15th day of January, and on March 20th will remit the premiums shown to be due the company by said report. Reports and remittances for succeeding months to be made upon the same basis."

Here again reference is made to the *general agents,* so that it must be apparent that the intent of the parties, at the time the contract was executed, so far as the reading of the same is concerned, conveys, without question, the idea that the parties contemplated a contract of agency, and such must be the ultimate conclusion here found, un-

less some rule of law intervenes to prevent the court from reaching such conclusion.

The trustee maintains that this is not a contract of agency in any sense of the word, but "it was clearly a contract between these parties of vendor and purchaser," and in his brief says that the contract "by its terms expressly eliminated any trust or fiduciary relationship that might, in the ordinary course of the conduct of such business, exist between the parties. The agreement created a relation of debtor and creditor." It is therefore apparent that, so far as the trustee is concerned, he relies upon the terms of the contract in order to find a correct interpretation of the contract itself, insisting that under the fourth clause of the contract, as amended, in view of the fact that it is provided that the credits extended for the payment of premiums shall be at the sole risk of the general agents, and that not later than the 20th day of each month they will forward to the home office a full and accurate report, in the form required by the company, of all business transacted for or on its behalf, for the period ending on the 15th day of the month for which such report is made, and will remit the full amount of all premiums shown by such report to be due the company within 60 days after the date when such report is due at the home office—that is to say, the general agents will forward on the 20th day of January a report of business transacted from the 15th day of the preceding December to the 15th day of January, and on March 20th will remit the premiums shown to be due the company by such report—that such provisions establish a contract between a vendor and vendee, and not a contract between a principal and agent.

In this conclusion I cannot concur, and, while no dispute can be had with the law cited in support of the facts as applied to the various cases relied upon, nevertheless the plain import of the question in this contract as to the intentions of the parties, as clearly expressed by it, forecloses the conclusion relied upon by the trustee in support of his claim. In my view of the situation, as disclosed by the record and careful reading of the contract, the outstanding premiums unpaid were clearly the property of the petitioner, who had appointed the Mason Company as general agents to sell its policies of insurance and collect its premiums for it, subject only to the right of the agents to comply with the regulations set forth in the contract, and to deduct certain commissions for services thus rendered as general agents. Further support for this conclusion is found in the provisions of the contract concerning the bond to be given by the general agents to the company, providing for the payment of all moneys that become due from the general agents to the company. If the money collected or to be collected for premiums was in the contemplation of the parties to be the property of the Mason Company, no bond would have been necessary; but it clearly appears that it was understood that the money collected for premiums was the property of the home office, and it was to secure the payment of it that the bond was given.

It is further argued by the trustee that creditors of the Mason Company could, in a suit to recover on their claims, have attached by garnishee process the uncollected premiums in the hands of the

various subagents of the Mason Company and even of individual policy holders, and urges this fact for the further reason of showing that the premiums were the property of the Mason Company, and now should be held by the trustee for the benefit of the estate. In this statement I cannot concur. Assuming that no bankruptcy proceedings had intervened, in such circumstances as the trustee outlines, would not the Mason Company have contended, and contended successfully, in those suits brought by the various creditors against it, that it had a contract whereby it had been appointed a general agent to collect these premiums, and that the money represented by it is not its property to the extent that it had a right to collect it and appropriate it to its own use, but rather that the money represented by premiums was the property of the home office, subject only to a deduction for commissions allowed by the terms of the contract, and that only to the extent of such commissions did they have an interest in the premiums? To that extent, and to that extent only, in my view of such an assumed situation, would an attaching creditor secure any part of the fund.. In other words, upon proper proceedings it would be bound to appear that the only moneys which were legally attached under such circumstances, and which belonged to the Mason Company, would be the commissions due it under the terms of the contract, and the balance of the money thus attached would have to be released in favor of the Massachusetts Bonding & Insurance Company.

The trustee relies upon Ætna Powder Co. v. Hildebrand, 137 Ind. 462, 37 N. E. 136, 45 Am. St. Rep. 194, and says in his brief exactly the same situation as in this case existed before the court, in which conclusion, after carefully reading the case, I cannot concur, for there the contract was an entirely different contract than the one here under consideration. But the trustee goes on further to say that in that case it was held that, where by the terms of a contract goods are consigned by one person to another to sell as agent upon a commission, the conclusion was reached by the court that this was a contract between the vendor and vendee. With that proposition there can be no quarrel, but that is not the case here, because goods here were not consigned by the home office, and, as I view it, the terms of the contract here under consideration make no such provision, and such was not the intention of the parties, even though the fourth paragraph of the contract provided that the credits extended should be at the risk of the general agents.

While it is true, as counsel have stated in the briefs, it has been difficult to find cases where this exact situation has arisen, I think it must be due, doubtless, to the fact that the propositions involved seem so clear and of such a fundamental character as to require the citation of no authority to support the contention; but my attention is directed to Jefferson Fire Ins. Co. v. Bierce & Sage (C. C.) 183 Fed. 588. This was a suit by an insurance company against its general agent for an accounting of premiums. The insurance company undertook to terminate the agency by the appointment of a receiver, and the question was whether the agency had been lawfully terminated,

and in the course of the opinion written by Judge Denison, of the Sixth Circuit, now of the Circuit Court of Appeals, he said at page 592:

"As to the uncollected accounts, it is not equitable that complainant should insist upon the defendant's guaranty, found in the contract, and at the same time deprive defendant of the power to collect, as was done by procuring the appointment of a receiver. The resort to these proceedings operated as a waiver of the guaranty. The accounts belong to the complainant."

This dictum is in line with the conclusion here reached.

If Lebanon Mutual Insurance Co. v. Hoover, 113 Pa. 591, 8 Atl. 163, 57 Am. Rep. 511, cited by the trustee, is at all pertinent to the question here to be decided, it in no way alters the conclusion here reached. Note carefully what Judge Sterrett, in writing the opinion of the court, says:

"They [the jury] found the established course of dealing between the three parties concerned [the assured, the agent, the company] was that Tredick, the agent, was treated as debtor to the company for premiums on all policies or renewal certificates procured through him, whether he received such premiums from the parties in whose favor they were issued or not, and that he was not expected to account and pay to the company until a statement was rendered during the next succeeding month; that as between Tredick [the agent] and the assured the latter were not expected to pay in advance, but upon demand made by him a month or more after the insurance was effected. ⁕ ⁕ ⁕ The true answer to the narrow technical defense, interposed in this case, is not that there was an actual waiver of the condition in question, but that there was a mutual understanding between the parties that instead of a strictly cash payment of premiums at the time of effecting insurance, a short credit would be given by the company to its agent and by him to the assured."

So here, if we adopt the reasoning of the Hoover Case, the conclusion is that, even though the contract here does provide that "all credits extended for the payment of premiums *shall be at the sole risk of the general agents,*" that provision simply made the Mason Company the "debtor" of the insurance company for all premiums collected or uncollected, and in no way could such a clause be construed so as to make the Mason Company the owner of the fund, which would have to be the case if the trustee is entitled to it. The contract was a "mutual understanding between the parties that, instead of a strictly cash payment of premiums at the time of effecting the insurance, a short credit would be given by the company to its agent and by him to the assured," and that by such a provision the express terms of the contract could not be altered to make it a contract of vendor and purchaser, even though the Mason Company became a "debtor." The language of the contract in the Hoover Case was not held to be a contract of vendor and purchaser, as urged by the trustee, but, on the contrary, a contract of agency pure and simple.

Nor is the Ætna Powder Co. Case, referred to and relied upon, at variance with the conclusion here reached, because the facts there are not the facts here. The contract there was different from the contract here. The wording of the contract itself clearly showed the intention of the parties, even as it does here, and even though the appellant there contended that the contract was one of principal

and agent, the court held that the language of the contract showed otherwise. The contract there provided that the Powder Company agreed to "consign" to Hildebrand & Fugate, to sell as agents, at a price to be fixed by the Powder Company below which the goods so "consigned" should not be sold, authorizing Hildebrand & Fugate to sell the goods "so consigned" at the established prices; and all through the contract the wording of it shows clearly that it was a contract of consignment and necessarily governed by the well-known legal principles respecting contracts of consignment, and not by the legal principles affecting contracts of sale by principal and agent.

In the course of the opinion Judge McCabe said:

"The only difference, therefore, between counsel on both sides as to this point, is that appellant's counsel contend that a different relation between the parties than that provided in the contract may arise or be created by the act of one of the parties thereto without any new contract, or the modification of the old by mutual agreement of both. Such a doctrine is at variance with the plainest and most familiar elementary principles of the law of contracts. It is manifest that the contract fixes the relations between the parties thereto at every stage of the transactions provided for therein."

So here by the very terms of the contract the parties were bound by the rules applicable to principal and agent, and not by those to vendor and vendee, and, thus concluding, I find that the fund was the property of the insurance company and the only property right the Mason Company had in it, and which the trustee now takes, is the property right in the commissions provided for in the contract, which vary slightly, as will be seen by reference to it, according to the character and kind of policy issued, but which amount may be easily computed by the trustee, for the purpose of determining what part of this fund he is entitled to hold for the benefit of the estate and what part shall be paid over to the petitioner.

It is further urged in support of the claim of the trustee that the insurance company by its own acts has created the relation of debtor and creditor, thus creating the relation of vendor and purchaser, by bringing its suit on the $4,000 note, which represents premiums collected by the Mason Company other than those here claimed; and it is also urged in this connection that, as the contract provided "that all credits extended for the payment of premiums shall be at the sole risk of the general agents," the fund here in dispute, by the acts of the parties and the terms of the contract, became the property of the Mason Company, and, now that bankruptcy has ensued, ipso facto, the property of the trustee. In my opinion such a statement refutes such a claim and answers the inquiry here presented, because the suit brought shows conclusively that the insurance company was endeavoring to collect what it considered was its property, and that it never treated the fund as the property of the Mason Company, to which it has always maintained that it had title, and the clear intendment of the clause of the contract above quoted simply shows that the "mutual understanding between the parties" was, to use the language of the court in the Hoover Case, supra, that, "instead of a strictly cash payment of premiums at the time of effecting insurance, a

short credit would be given by the company to its agent and by it to the assured," and if the Mason Company saw fit to extend credit to customers on the insurance company's money, it, the Mason Company, must assume the risk as to whether the customers it saw fit to do business with were financially responsible, in view of the fact that by the very nature of the transactions the insurance company could not and would not undertake to decide the question of financial responsibility of the Mason Company's customers.

In other words, assuming that the contract had not made any provision for the extension of credit, and provided that the business should be strictly cash from assured to the Mason Company—from the Mason Company to the home office—could it be claimed with any seriousness that the cash premiums collected by the Mason Company were its property, to which it held title? The very statement compels a negative answer. So it seems very clear to me that, as the contract simply provided a means for the very same transaction on a credit basis, the legal effect of the transaction was in no way changed and so the title to the premiums was in the insurance company, less what, under the contract, the Mason Company was entitled to deduct as a commission, and to this commission, and that only, the Mason Company had title, and this sum, and this only, is what passes to the trustee for the benefit of the estate.

Therefore the order of the referee is modified, and an order may be entered providing for the payment of such an amount to the trustee as is represented by the commissions provided for in the contract, and the balance shall be paid by the trustee to the Massachusetts Bonding & Insurance Company, the petitioner herein, all in accordance with this opinion.

Ordered accordingly.