THALMAN ET AL. V. MONTGOMERY WARD & CO., INC.

[No. 18,446. Filed January 8, 1954. Rehearing denied February 19, 1954. Transfer denied April 15, 1954.]

444

*William Robison, Jr.,* of Frankfort, *Earl B. Barnes, Robert S. Ashby,* of Indianapolis, and *Robison & Robison,* of Frankfort, and *Barnes, Hickam Pantzer & Boyd,* of Indianapolis (of Counsel), for appellants.

*Emerson Boyd, Hugh E. Reynolds, Jr.,* of Indianapolis, *Russell P. Harker,* of Frankfort, and *David L. Dickson,* of Chicago, Illinois, and *Harker & Irwin,* of Frankfort, and *Slaymaker, Locke & Reynolds,* of Indianapolis (of Counsel), for appellee.

CRUMPACKER, C. J.—The appellants are the owners of a store building in downtown Kokomo, Indiana, which is now in the possession of the appellee under the terms of a 10-year lease and its renewals executed in 1933 and effective on March 1, of that year. Asserting that the appellee paid them only a part of the rent due, under the terms of said lease, from March 1, 1933, through February 29, 1948, the appellants brought this suit to collect the unpaid balance thereof and recovered judgment in the sum of $3,909.62. Dissatisfied therewith they prosecute this appeal predicating their right to a reversal largely on the contention that the court erroneously construed certain provisions in the lease which resulted in a recovery for less than the amount to which they are entitled under a proper construction thereof.

When the lease in controversy, which we will hereafter call the Thalman lease, was executed the appellee's Kokomo store occupied all of two structures known as the Thalman and Johnson buildings and parts of two others known as the Kresge and Stewart buildings. Each building was separately owned and each was under separate lease to appellee. The Stewart lease expired on March 3, 1935, and the appellee vacated the premises on that date but on December 1, 1940, it again went into possession, this time of the entire building, under a new lease effective through February 28, 1963. The Johnson lease is also effective through February 28, 1963, and the Kresge lease through February 28, 1961. The Thalman lease is for an initial period of 10 years with options for two renewals of 10 years each which have been exercised, thus extending the appellee's leasehold through February 28, 1963. All the buildings or parts thereof were so connected by structural design as to make the entire premises a single integrated unit for store purposes.

The Thalman lease specifies a fixed yearly rental for the demised premises in the sum of $2,650 and in addition thereto an amount equal to one and one-fourth per cent of the net sales made by the appellee "in the premises" during the year in excess of a basic net sales total of $300,000, provided however that the combined fixed rent and such additional percentage rent shall not exceed a maximum sum of $6,000. "In the premises" is defined to mean the Thalman, Johnson, Kresge and Stewart buildings. The right to acquire "other premises" for use in its business is reserved to the appellee in which event net sales in such "other premises" shall not be considered in determining rent for the Thalman building unless the appellee elects to do so. In the event of such an election the appellee is privileged to deduct one-half of the rent paid for such "other prem-

ises" from the total additional rent for the Thalman building as determined by the combined sales made in the premises defined in the lease and such "other premises." As heretofore stated the initial term of the Thalman lease is 10 years but it gives to the appellee an option to extend the same for an additional period of 10 years after February 28, 1943, and in connection therewith provides that "the word 'premises' for the purposes of this option shall be construed and understood to mean and include both the premises demised herein (the Thalman building) and the said premises described in said Johnson and Kresge leases . . ." It is noted that any direct reference to the Stewart building is omitted from this provision of the lease.

The second Stewart lease, effective December 1, 1940, provided for a fixed rental of $5,400 per year and in case the appellee chose to remodel, improve and decorate the building it provided that the Stewarts should borrow not more than $30,000 from a lender to be designated by the appellee. Such loan was to be secured by an appropriate note and mortgage on the Stewart building to be repaid by the borrower in equal installments over a period of not more than 20 years. The proceeds of said loan were to be paid to the appellee to be used by it in making the improvements contemplated. Thereupon the appellee was required to make additional rental payments to the landlord equal to the payments made by the landlord under the terms of said mortgage. All this was done and the appellee concluded that the Stewart building which they thus acquired on December 1, 1940, was "other premises" as defined by the Thalman lease. It elected to include the net sales made in the Stewart building as a factor in determining the Thalman percentage rent and deducted therefrom a sum equal to one-half the rent it was required to pay the Stewarts, including the money paid to them to liquidate

the mortgage loan above mentioned. This action on the part of the appellee precipitated this law suit in which the appellants seek to recover the deductions so made from December 1, 1940, through February 29, 1948, upon the theory that they were made contrary to the provisions of the Thalman lease.

The trial court concluded that the entire Stewart building was included "in the premises" described in the Thalman lease and upon which the appellee had agreed to pay the appellants a percentage of the net sales made therein during the initial period of 10 years and therefore said building, although not acquired in its entirety until December 1, 1940, was not "other premises" by reason of which any deductions could be made from the Thalman rent during that period. The court further concluded that the Thalman lease, for the purpose of renewals thereof, redefined the word "premises" in such manner as to exclude the Stewart building and that therefore after February 28, 1943, the expiration of the initial term of 10 years, said building became "other premises" and the appellee, having elected to pay the appellants a percentage of the net sales made therein, was entitled to deduct one-half the rent paid to the Stewarts, including that which went to liquidate their mortgage, from the rent due under the Thalman lease. On this basis the court assessed the appellant's damages at $3,909.62 and rendered judgment accordingly.

Both parties are apparently satisfied with the court's construction of the lease as it pertains to the initial term of 10 years but the appellants assert error in the court's conclusion that the Stewart building became "other premises" during the renewal period. The virtue of this contention depends largely on the construction of paragraph 24 of the Thalman lease which reads as follows:

" 'It is hereby specifically agreed that wherever in the prior provisions numbered three (3) of this lease and in the provisions numbered twenty-four (24) hereof, including all of the provisions of this lease with reference to the rent to be paid by the Tenant to the Landlord, the word or words "premises" or "property", or any other word or words of reference to the estate demised herein are used, such word or words shall be construed and understood to mean and include both the premises herein demised and all of said adjacent premises in this paragraph and in the next preceding paragraph numbered twenty-three (23) hereof, referred to, except that the amounts hereinunder determined to be paid as rent by the Tenant to the Landlord herein shall be the rent payable by the Tenant for the premises demised in this lease only.' "

The appellants contend that this paragraph means that wherever, in the entire lease, provisions are made for the payment of rent to the appellants the premises concerned in the determination of such rent include the Stewart building and therefore it cannot, under any circumstances, be considered "other premises" for which rent deductions can be made. This contention is prompted by the use, in said paragraph, of the phrase "including all of the provisions of this lease with reference to the rent to be paid by the tenant to the landlord," which, the appellants say, carries the definition of "premises" set out in paragraph 24 over into those sections of the lease pertaining to renewal periods and supersedes anything therein said to the contrary.

There can be little quarrel, we think, with the proposition that the lease involved is to be construed as a whole and not by a process of isolating clauses out of context and considering them without reference to the apparent intention of the parties as evidenced by the whole instrument, *Freigy* v. *Gargaro*

*Company, Inc.* (1945), 223 Ind. 342, 60 N. E. 2d 288; *Elliott* v. *Travelers Ins. Co.* (1951), 121 Ind. App. 400, 99 N. E. 2d 274, or, in case of ambiguity, by resorting to extrinsic evidence. *Merrell* v. *Garver* (1913), 54 Ind. App. 514, 101 N. E. 152; *Morse* v. *Morse* (1940), 108 Ind. App. 140, 27 N. E. 2d 392.

The court's special finding of facts is not set out in full in the appellant's brief but in lieu thereof they have chosen to present a digest of those findings which they consider essential to this appeal. Such being the situation we believe we are justified in seeking any reasonable construction of the lease which is consistent with the court's judgment. *Frick Co., Inc.* v. *Walter Cox Co., Inc.* (1936), 101 Ind. App. 402, 199 N. E. 462. With this principle in mind we are convinced that there is sufficient evidence in the record to warrant the court in finding that at the time the Thalman lease was executed appellee was in possession of only a part of the Stewart building under the terms of a lease which had approximately two years and two months to run and which it had no then intention of renewing as is evidenced by its surrender of the premises at the expiration of said lease on May 31, 1935. That under such circumstances the inference follows that the parties to the Thalman lease, in providing for its renewal, found it necessary to redefine the premises involved in the determination of the percentage rent due the Thalmans by omitting the Stewart building. To effect this purpose they put paragraph 28 in the lease, the second sentence of which reads as follows:

" 'The word "premises" for the purposes of this option shall be construed and understood to mean and include both the premises demised herein and the said premises described in said JOHNSON and KRESGE leases, so long as the Tenant continues to lease and use the premises described in said JOHNSON and KRESGE leases, for retail

purposes in connection with the property herein demised, and the "net sales" for any optional or extended periods, shall be construed to mean the "net sales" as hereinabove defined.' "

The appellants contend however that paragraph 28 does not omit the Stewart building in its redefinition of the premises concerned because said building is described in the Johnson lease and had the parties intended to include only the property demised by the Johnson lease they would have used the word "demised" instead of the word "described." It must be borne in mind that the appellee's store is an integrated unit occupying four adjacent buildings under four separate and distinct leases with four sets of landlords and in each lease permission is given the appellee to use the demised property in connection with adjacent property therein described and which constitute that part of the appellee's store in which a percentage of net sales are to be paid as a part of the rent for the demised premises. An examination of these leases reveals a pattern whereby a building not demised but necessarily mentioned is invariably referred to as the "described property." Following that pattern it is apparent that the parties in the Thalman lease, seeking to include the Johnson building in the redefinition of "premises," referred to it as "premises described" rather than as "premises demised." The premises described in the Johnson lease certainly include the premises demised therein and the scope of the phrase "premises described" may be limited to the demised premises if, from the whole document, it appears that it was the intention of the parties to do so. *Warrum* v. *White* (1909), 171 Ind. 574, 86 N. E. 959. Following appellant's agreement to its logical conclusion it would have been unnecessary to mention specifically the Kresge lease in order to bring the property therein demised into paragraph 28 since

the Johnson lease describes it as well as the Stewart building. The Kresge lease also describes the Johnson and Thalman buildings and the second Stewart lease describes the Johnson, Thalman and Kresge buildings by street number. All this leads us to the conclusion that the premises described in the Johnson and Kresge leases, as the word "described" is used in paragraph 28, means the premises described in those clauses of the leases mentioned that constitute the demise.

The appellants emphasize the fact that, if the parties had so intended, the Thalman lease could have stated specifically that one-half of the Stewart rents were deductible during renewals as was expressly provided in paragraph 30 for the Kresge rents. We attach no signficance to that situation because in 1933, when the lease was drawn, the circumstances indicate that the parties had no reasonable ground to believe that the Stewart building would be under lease to the appellee in 1943.

The appellants further contend that because the definition of "premises" contained in paragraph 24 includes the Stewart building and applies "to all the provisions of this lease with reference to the rent to be paid by the tenant to the landlord" it becomes repugnant to paragraph 28, when the latter paragraph is construed to exclude the Stewart building from the premises therein defined, and therefore paragraph 24, having priority of position in the lease, must control. While some cases and text books sanction this so-called rule of priority of clauses the great weight of authority characterizes it as arbitrary and suggests that it should be employed only as a last resort. For a discussion of the rule see *Mealey* v. *Kanealy* (1939), 226 Iowa 1266, 286 N. W. 500. We see no reason for its application here. The provisions of paragraph

24 to the effect that the definition of "premises" therein stated shall apply to all the provisions of the lease pertaining to rent may reasonably be construed to mean those provisions for the payment of rent during the definite term of the lease which was 10 years. Otherwise there would have been no occasion to redefine "premises" in case the option to renew was exercised. When so construed there is no repugnancy between the two paragraphs of the lease and the rule of priority of clauses loses applicability.

Finally the appellants contend that the additional money paid by the appellee to the Stewarts to be used by them in liquidating their mortgage loan is not rent money and therefore half thereof was not deductible from the rent due on the Thalman building. That the money obtained by the appellee for remodeling purposes was a loan, in substance and in form, by the owners of the Stewart building to the appellee, to be paid off by it in installments erroneously designated in the lease as "additional rent." It has been held that where a lease specifically fixes the rent and independently thereof obligates the tenant to pay the taxes, special assessments and costs of improvements, etc., the term rent will not be extended to include such collateral covenants. *Arcangel v. Holling, Mayor* (1939), 15 N. Y. S. 2d 975. It is also true, we think, that the repayment of money borrowed by the tenant from the landlord, cannot be considered the payment of rent even though it is so called in the lease. Such money is not paid to compensate the landlord for the use of the premises and false nomenclature cannot make it rent. *Miners' Bank* v. *Heilner* (1864), 47 Pa. 452.

On the other hand if a tenant desires certain alterations made in a building of which he is then in

possession we know of no legal reason why the landlord cannot make them and reimburse himself for the cost thereof by increasing the rent if the tenant agrees to pay it nor do we know of any legal reason why the amount of the increase should not be considered a part of the rent for the use of the building as remodeled and improved where the intention of the parties to so consider it clearly appears. It seems to us that the present controversy, in its last analysis, resolves itself into such a situation. The appellee leased the Stewart building at an annual rental of $5,400. The lease provided, in practical effect, that if the appellee wanted the building remodeled and improved in a manner considered more suitable to its business the landlord would borrow money for such purpose up to $30,000 and turn it over to the appellee who was to undertake the job to its own plans and specifications. In the event the appellee's optional right to remodel was exercised and the work done, installments of the cost thereof were to be added to the stipulated rent. The appellee exercised its option and the work was done. The landlord's money paid for the improvements and the building as improved belonged to them. They had an additional $30,000 invested in the building and were entitled to more rent which the parties, by the formula set out in the lease as applied to the facts, agreed should be five percent of the cost of such improvement per year for 20 years.

It was held in *M'Cann* v. *Evans* (1911), 185 F. 93 "that definite sums, or sums capable of being made definite, chargeable on the demised premises by way of taxes, or for gas and water, or for improvements and betterments and such like will be considered as rent or included therein when the intention to so consider them is made clear in the contract between the lessor and the lessee." A reading of the lease here

involved leaves no doubt that the parties intended installment payments, made by the appellee to the Stewarts to reimburse them for the cost of alterations and improvements, should be considered a part of the rent for the use of the Stewart building thus made more adaptable to the appellee's needs. Such being the intention of the parties so must the lease be construed.

We find no reversible error and the judgment is affirmed.

NOTE.—Reported in 116 N. E. 2d 543.